IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | CRIMINAL INDICTMENT |
| vs. ) | |
| ) | NO: 1:13-CR-214-AT-JFK |
| ) | |
| JENNIFER ALSDORF, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT JENNIFER ALSDORF'S PRELIMINARY MOTION TO SUPPRESS STATEMENTS AND MOTION FOR EVIDENTIARY HEARING; TOGETHER WITH SUPPORTING MEMORANDUM**

COMES NOW, Defendant Jennifer Alsdorf, pursuant to Federal Rules of Criminal Procedure 12(b)(3) and 41(h), and the Sixth and Fourteenth Amendments to the United States Constitution, and hereby files this Preliminary Motion to Suppress Statements unlawfully obtained in an uncounseled, post-indictment interrogation.  Ms. Alsdorf also moves the Court, pursuant to 18 U.S.C. § 3501(a) and <u>Jackson v. Denno</u>, 378 U.S. 368 (1964), for an evidentiary hearing to determine the additional factual basis of her Motion to Suppress.

1

## I.  FACTUAL BACKGROUND

On May 21, 2013, a grand jury serving in this district returned an eighty-four count indictment against Ms. Alsdorf.  Counts One through Seventy-Four allege violations of "Title 18, United States Code, Sections 1347 and 2" ("Health Care Fraud").  The remaining Counts Seventy-Five through Eighty-Four allege violations of "Title 18, United States Code, Sections 1343 and 2" ("Wire Fraud").  At the time of the indictment, Ms. Alsdorf was not notified of the charges against her.

On May 30, 2013, over a week after Ms. Alsdorf was indicted, two agents from the Federal Bureau of Investigation ("FBI") knocked on Ms. Alsdorf's door and asked if they could come inside.  Ms. Alsdorf was home alone at the time the FBI agents arrived – her children had just left for school and her husband, Shaun, was out of town for work.  Although she was startled by the presence of FBI agents at her home at approximately nine o'clock in the morning, Ms. Alsdorf let the agents inside and the three of them sat down at her kitchen table.

Shortly after entering Ms. Alsdorf's residence, the agents presented her with an FBI "Advice of Rights" form, which she signed.  At this point, Ms. Alsdorf still had not been told that she had been formally charged with a crime.  Ms. Alsdorf had been questioned by government "agents" in the past in connection with

Medicaid and Medicare audits, and, as such, she believed that she was being requested to provide information to assist the government in an ongoing investigation. Of course, unbeknownst to Ms. Alsdorf, the government's investigation *of her* had already begun and she had already been indicted. In fact, the FBI agents had in their possession a warrant for Ms. Alsdorf's arrest – a fact Ms. Alsdorf was not made aware of until her interrogation was underway. In short, Ms. Alsdorf was not aware that, at the time of her interrogation, her criminal prosecution had already begun.

Shortly after the FBI agents began their interrogation of Ms. Alsdorf, it became apparent that they were attempting to implicate her in criminal conduct. It was around this time that one of the agents informed Ms. Alsdorf – for the first time – that he had in his possession a warrant for her arrest. At this point, after having already answered several of the agents' questions, Ms. Alsdorf began to appreciate the gravity of this perilous situation. As such, she immediately ended the interrogation. She was then handcuffed and taken to the FBI's Tampa, Florida Field Office for processing.[1]

---

[1] Venue in this case is arguably most appropriate in the Middle District of Florida. That is where the Defendant and the majority of her witnesses reside and it is also where the allegedly fraudulent conduct occurred. See U.S. Const. art. Iii, § 2, cl. 3; U.S. Const. amend VI ("The Trial of all Crimes … shall be held in the State where the said Crimes shall have been committed"); see also United States v. Bradley,

## II.     ARGUMENT AND CITATION OF AUTHORITY

### A.    The Federal Bureau of Investigation's Post-Indictment Interrogation Violated Ms. Alsdorf's Sixth Amendment Right to Counsel

At the time of the government's interrogation, Ms. Alsdorf was not aware of her Sixth Amendment right to counsel.  Although Ms. Alsdorf signed an FBI "Advice of Rights" form which purportedly summarized her Fifth Amendment Rights, this showing is merely the beginning of the analysis, as Ms. Alsdorf's Sixth Amendment right to counsel attached at the time of her indictment, which preceded her interrogation.  See Kirby v. Illinois, 406 U.S. 682, 688-89 (1972) (plurality opinion).  Ms. Alsdorf' Sixth Amendment right to counsel was triggered as soon as the prosecution was commenced, that is, "at or after the initiation of adversary judicial criminal proceedings – whether by way of formal charge, preliminary hearing, indictment, information, or arraignment."  United States v. Gouveia, 467 U.S. 180, 188 (1984) (internal citations omitted).

Because her Sixth Amendment right to counsel arose with her indictment, federal agents were thereafter barred from initiating questioning prior to Ms. Alsdorf's knowledge that she had been indicted.  The essence of Edwards v. Arizona, 451 U.S. 477 (1981), and its progeny is the preservation of the integrity

---

644 F.3d 1213, 1251 (11th Cir. 2011) (stating that "[v]enue, in a criminal case, is constitutionally proper only in the district where the crime was committed").

of an accused's choice to communicate with police only through counsel. At the time of the interrogation in this case, Jennifer Alsdorf was not aware that she had been formally charged. This fact is particularly troubling because Ms. Alsdorf had been indicted over one week prior to the custodial interrogation. Despite this, the agents did not apprise Ms. Alsdorf of the formal charges against her. Consequently, Ms. Alsdorf did not, and could not, have appreciated the heightened severity of the consequences associated with the interrogation. As such, she could not have made a "knowing and intelligent" waiver of her Sixth Amendment rights.

As stated by the United States Supreme Court in Michigan v. Jackson, 475 U.S. 625 (1986), only when an accused "knowingly and intelligently" elects to proceed without counsel can the uncounseled statements she then makes be admitted at trial. However, in this case, because the interrogating agents withheld vital facts, Ms. Alsdorf did not "knowingly and intelligently" make a decision to proceed without counsel.

As has been noted by the Supreme Court, a waiver of the Sixth Amendment right to counsel is valid only when it reflects "an intentional relinquishment or abandonment of a *known* right or privilege." Johnson v. Zerbst, 304 U.S. 458, 464-65 (1938) (emphasis added). In other words, a criminal defendant must "know what [she] is doing" so that "[her] choice is made with eyes wide open."

Adams v. United States ex rel. McCann, 317 U.S. 269, 279 (1942).  As a matter of pure fact, Ms. Alsdorf could not have made a 'knowing' decision because the interrogating agents failed to inform her of the information required to make such a meaningful, significant decision – i.e., that she had been charged with a crime.

### B. The "Advice of Rights" Form Was Not A Waiver of Ms. Alsdorf's Sixth Amendment Rights During this Uncounseled, Post-Indictment Interrogation

Because the Sixth Amendment's protection of the attorney-client relationship – "the right to rely on counsel as a 'medium' between [the accused] and the State" – extends beyond Miranda's protection of the Fifth Amendment right to counsel, see Maine v. Moulton, 474 U.S. 159, 176 (1985), there are instances where a waiver which would be valid under Miranda will not suffice for Sixth Amendment purposes.  See also Michigan v. Jackson, 475 U.S. at 632.  "The Sixth Amendment guarantees the accused, at least *after the initiation of formal charges*, the right to rely on counsel as a "medium" between [her] and the State."  Moulton, 474 U.S. at 176 (emphasis added).  In this case, Ms. Alsdorf was deprived of the ability to invoke her Sixth Amendment right to counsel.

The effectiveness of a waiver of Fifth or Sixth Amendment rights is a "legal question requiring independent federal determination," Miller v. Fenton, 474 U.S. 104, 110 (1985), based upon the "'particular facts and circumstances surrounding

6

the case, including the background, experience, and conduct of the accused.'" Edwards v. Arizona, 451 U.S. at 482-83 (internal citations omitted). Thus, in addition to establishing that a waiver is voluntary, the government must show that the defendant "has been sufficiently apprised of the nature of [her] Sixth Amendment rights, and of the consequences of abandoning those rights." Patterson v. Illinois, 487 U.S. 285, 296 (1988).

The question of the admissibility of uncounseled, post-indictment statements has yielded an array of standards throughout the country. Tinsley v. Purvis, 731 F.2d 791, 794 (11th Cir. 1984). However, courts continue to acknowledge that "[t]he right to counsel granted by the Sixth and Fourteenth Amendments means at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him…." Brewer v. Williams, 430 U.S. 387, 398 (1977). This is because, after the initiation of adversary criminal proceedings, "'the government has committed itself to prosecute, and … the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law.'" Gouveia, 467 U.S. at 189 (internal citations omitted).

After a defendant's Sixth Amendment right to counsel attaches, she has a right to the advice of counsel "at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." United States v. Wade, 388 U.S. 218, 226 (1967).  The United States Supreme Court has referred to such a stage as a "critical stage" of a criminal proceeding.  Michigan v. Jackson, 475 U.S. at 632, n.5.  Obviously, the post-indictment interrogation of a criminal defendant by federal agents is a 'critical stage' in a criminal proceeding.  Id. at 632-33.  The Wade post-indictment protections are meaningless if a defendant is not afforded with the knowledge that she has been formally charged with a crime, as was the case here.

In Wade, the Supreme Court summarized the concerns governing the right to counsel:

> In sum, the principle of Powell v. Alabama and succeeding cases requires that we scrutinize any pretrial confrontation of the accused to determine whether the presence of his counsel is necessary to preserve the defendant's basic right to a fair trial as affected by his right meaningfully to cross-examine the witnesses against him and to have effective assistance of counsel at the trial itself. It calls upon us to analyze whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice.

Id. at 227 (internal citations omitted).

Ultimately, the Wade Court held that a defendant was entitled to advice of counsel at a post-indictment lineup, because a lineup was a trial-like confrontation

8

between the accused and the witnesses to a crime and held a grave potential for substantial prejudice to the accused. 388 U.S. at 228-37. The Court reasoned that the assistance of counsel at the lineup preserved the adversary process by compensating for advantages of the prosecuting authorities and that lack of legal assistance was likely to deprive the accused of his only meaningful opportunity to attack the identifying witness's credibility. Id. at 232. Similarly, in this case, the post-indictment interrogation of Ms. Alsdorf, without an attorney present, resulted in a substantial prejudice. If the government were permitted to conduct such uncounseled, post-indictment interrogations, it "[w]ould make the trial no more than an appeal from the interrogation; and the right to use counsel at the formal trial [would be] a very hollow thing [if], for all practical purposes, the conviction is already assured by pretrial examination." Id. at 226.

### C. Post Indictment Interrogations Require A Knowing and Voluntary Waiver of a Defendant's Sixth Amendment Right to Counsel

Ms. Alsdorf could not have waived a right that she did not know had already attached. That is, without knowing that she had previously been indicted, Ms. Alsdorf could not have made the decision to waive her right to counsel with her "eyes wide open."

In Spano v. New York, 360 U.S. 315 (1959), a defendant who had already been indicted was interrogated by police until he confessed. A unanimous Supreme Court reversed his conviction on the ground that the confession obtained by this interrogation was involuntary and therefore should not have been admitted into evidence at trial. Four Justices, in two concurring opinions, stated that they would have reached this same result on the ground that Spano's Sixth Amendment right to counsel was violated. These Justices reasoned that to permit police to "produce the vital evidence in the form of a confession which is useful or necessary to obtain a conviction" in the absence of counsel, after the right to counsel has attached, is to deny the accused "effective representation by counsel at the only stage when legal aid and advice would help him." Id. at 325-26. As Justice Douglas succinctly summarized, "what use is a defendant's right to effective counsel at every stage of a criminal case if, while he is held awaiting trial, he can be questioned in the absence of counsel until he confesses?" Id.

Once criminal proceedings have been formally instituted against a defendant, as they were here, the need for counsel is particularly acute. After prosecution has begun, the right to obtain the assistance of counsel at all crucial stages is essential if both the symbol and reality of a fair trial are to be preserved. The Sixth Amendment guarantees the accused "that he need not stand alone against

the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." Wade, 388 U.S. at 226. Because this Sixth Amendment right is so important, the Supreme Court has held that every reasonable presumption against waiver must be indulged. Brewer v. Williams, 430 U.S. at 404. Once a defendant has been indicted, a waiver of her Sixth Amendment right to counsel requires the clearest and most explicit explanation and understanding of what is being given up.

Once the right to counsel has attached, the government is under an "affirmative obligation" to respect and preserve the accused's choice to seek this assistance, and law enforcement authorities must take no action that "circumvents, and thereby dilutes the protection afforded by the right to counsel." United States v. Terzado-Madruga, 897 F.2d 1099 (11th Cir. 1990) (quoting Moulton, 474 U.S. at 171). The Supreme Court made clear in United States v. Henry, 447 U.S. 264, 274 (1980), that the government violates a defendant's Sixth Amendment right "[b]y intentionally creating a situation likely to induce [an accused] to make incriminating statements without the assistance of counsel." In this case, the government created this very type of situation. Ms. Alsdorf was interrogated without the knowledge that she had been indicted. In reality, however, the

11

government purposefully withheld this information from Ms. Alsdorf in an effort to take advantage of her in an uncounseled setting.

The uncounseled, post-indictment custodial interrogation which took place in this case is the very situation which most urgently requires the presence of counsel.  At one end of the spectrum, the Supreme Court has concluded there is no Sixth Amendment right to counsel at a post-indictment photographic display identification because the procedure is not one at which the accused "require [s] aid in coping with legal problems or assistance in meeting his adversary."  See United States v. Ash, 413 U.S. 300, 313-20 (1973).  At the other extreme, recognizing the important role that an attorney plays at a criminal trial, the Supreme Court has imposed rigorous restrictions on the information that must be conveyed to a defendant, and the procedures that must be observed, before permitting him to waive his right to counsel at trial.  See Faretta v. California, 422 U.S. 806, 835-36, (1975); cf. Von Moltke v. Gillies, 332 U.S. 708, 723-24, (1948).  In the cases that fall between these two extremes, the Supreme Court has defined the scope of the Sixth Amendment right to counsel by considering the usefulness of counsel to the accused at the particular proceeding, and the dangers to the accused of proceeding without counsel.  In light of that analysis, an accused's waiver of her right to

counsel is "knowing" only when she is made aware of these basic facts.  Patterson, 487 U.S. at 298.

In this case, Jennifer Alsdorf's cooperation was, in part, to prevent against being formally charged under an indictment.  This misunderstanding resulted because she was not made aware of the basic facts of the government's investigation (i.e., the investigation had already concluded and Ms. Alsdorf had already been indicted!)  Under these circumstances, any waiver is premised on omitted facts and partial explanations.  The government should not be rewarded for failing to disclose *all* relevant factors which would allow an accused to make a "knowing and intelligent" waiver.

The knowing exploitation by the government of an opportunity to confront the accused without counsel being present is as much a breach of the government's obligation not to circumvent the right to counsel as is the intentional creation of such an opportunity.  Accordingly, the Sixth Amendment is violated when the government obtains incriminating statements by knowingly circumventing an accused's right to have counsel present in a confrontation between the accused and a state agent.  Moulton, 474 U.S. at 175.  As Henry makes clear, proof that the State "must have known" that its agent was likely to obtain incriminating

statements from the accused in the absence of counsel suffices to establish a Sixth Amendment violation.  447 U.S. at 271.

The Supreme Court has routinely found that the relinquishment of the Sixth Amendment right to counsel is extremely limited.  "To preserve the fairness of the trial process the Court established an appropriately heavy burden *on the Government* before waiver could be found – 'an intentional relinquishment or abandonment of a known right or privilege.'"  Schneckloth v. Bustamonte, 412 U.S. 218, 236-37 (1973) (quoting Johnson v. Zerbst, 304 U.S. at 464) (emphasis added); see also Patterson, 487 U.S. at 292.  In this case, Ms. Alsdorf was not provided the necessary information required to make a "knowing and intelligent" waiver of her Sixth Amendment rights.  There was not an intentional relinquishment of a known right because the pertinent information (i.e., that she had already been indicted) was purposefully withheld.  As such, Ms. Alsdorf's uncounseled, post-indictment statement must be suppressed.

### III.  CONCLUSION

For the reasons set forth above, Ms. Alsdorf requests that the Court grant her Motion and suppress her May 30, 2013, statements to the FBI.  Alternatively, Ms. Alsdorf requests an evidentiary hearing, pursuant to 18 U.S.C. § 3501(a) and

Jackson v. Denno, to determine the additional factual basis of her Motion to Suppress.

Respectfully submitted this 12th day of July, 2013.

*/s/ Brian F. McEvoy*
Brian F. McEvoy
Ga. Bar No. 490845
Counsel for Jennifer Alsdorf

CHILIVIS, COCHRAN, LARKINS & BEVER LLP
3127 Maple Drive, N.E.
Atlanta, Georgia  30305
Telephone: (404)233-4171
Facsimile: (404)261-2842
bfm@cclblaw.com

## CERTIFICATE OF COMPLIANCE WITH
## LOCAL RULE 5.1

I hereby certify that the foregoing was prepared in Times New Roman 14 point font, double-spaced, with a top margin of not less than 1.5 inches and a left margin of not less than 1 inch.

Respectfully submitted this 12th day of July, 2013.

>  */s/ Brian F. McEvoy*
> Brian F. McEvoy
> Ga. Bar No. 490845
> Counsel for Jennifer Alsdorf

CHILIVIS, COCHRAN, LARKINS & BEVER LLP
3127 Maple Drive, N.E.
Atlanta, Georgia  30305
Telephone: (404)233-4171
Facsimile: (404)261-2842
bfm@cclblaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the within and foregoing with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record.

Respectfully submitted this 12th day of July, 2013.

*/s/ Brian F. McEvoy*
Brian F. McEvoy
Ga. Bar No. 490845
Counsel for Jennifer Alsdorf

CHILIVIS, COCHRAN, LARKINS & BEVER LLP
3127 Maple Drive, N.E.
Atlanta, Georgia  30305
Telephone: (404)233-4171
Facsimile: (404)261-2842
bfm@cclblaw.com